Jackie WILSON, Plaintiff–Appellant,

v.

James K. WILLIAMS, Defendant–
Appellee.

No. 97–2637.

United States Court of Appeals,
Seventh Circuit.

Argued April 22, 1999.

Decided June 29, 1999.

Rehearing Denied Aug. 17, 1999.

---

Steven H. Hoeft, Craig H. Zimmerman (argued), McDermott, Will & Emery, Chicago, IL, for Plaintiff–Appellant.

Richard A. Devine, Michael D. Jacobs, David S. Meyerson, Paul A. Castiglione (argued), Office of the State's Attorney of Cook County, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and HARLINGTON WOOD, JR., COFFEY, EASTERBROOK, RIPPLE, MANION, KANNE, DIANE P. WOOD, and EVANS, Circuit Judges.[*]

EASTERBROOK, Circuit Judge.

We heard this case en banc to decide whether an objection at trial always is necessary after a pretrial ruling that evidence will be admitted. We conclude that a definitive ruling *in limine* preserves an issue for appellate review, without the need for later objection—but this is just a presumption, subject to variation by the trial judge, who may indicate that further consideration is in order. Moreover, issues about *how* the evidence is used, as opposed to yes-or-no questions about admissibility, frequently require attention at trial, so that failure to object means forfeiture. This latter principle determines the outcome of today's case.

Jackie Wilson alleges in this suit under 42 U.S.C. § 1983 that James Williams, a guard at the Cook County Jail, attacked him without provocation and inflicted seri-

---

[*] Circuit Judges Flaum and Rovner did not participate in the consideration or decision of this case.

ous injuries. Williams contends that Wilson was the aggressor and that the force used in defense was reasonable under the circumstances. The district court granted summary judgment to Williams, but we reversed and held that the conflicting stories must be presented to a jury. 997 F.2d 348 (1993). After a trial ended in a verdict for Williams, we reversed because of errors in the jury instructions. 83 F.3d 870 (1996). The second jury likewise sided with Williams, and this time the panel affirmed. 161 F.3d 1078 (1998).

Two police officers stopped the car in which Jackie and his brother Andrew were riding. Andrew grabbed one officer's service revolver and shot both with it, killing them; Jackie, who stole the second officer's gun, is culpable as an accomplice under the felony-murder doctrine because the deaths occurred during the commission of another felony (not only the thefts of the guns but also a plan to use the guns in helping a friend break out of prison). Andrew was convicted of both murders, *People v. Andrew Wilson*, 254 Ill.App.3d 1020, 193 Ill.Dec. 731, 626 N.E.2d 1282 (1st Dist. 1993), and Jackie of one, *People v. Jackie Wilson*, 257 Ill.App.3d 670, 195 Ill.Dec. 8, 628 N.E.2d 472 (1st Dist.1993). Both Wilsons are serving terms of life imprisonment without possibility of parole, and both filed § 1983 suits contending that they were beaten (in separate incidents) while in custody before their convictions. Andrew recovered a substantial judgment, *Wilson v. Chicago*, 120 F.3d 681 (7th Cir. 1997), though he had trouble receiving a fair trial because the defendants harped on the nature of the crime he had committed. See *Wilson v. Chicago*, 6 F.3d 1233 (7th Cir.1993) (reversing an initial jury verdict in defendants' favor because the district judge failed to control inappropriate use of Andrew's criminal history).

Before the second trial of his civil suit began, Jackie Wilson asked the district judge to prevent Williams from informing the jury that he had been convicted of killing a police officer. Wilson recognized

that his criminal history could be used to impeach him. Although the convictions could not be used automatically under Fed. R.Evid. 609(a)(1), he remained subject to impeachment if application of Fed.R.Evid. 403 made it appropriate. Cf. Fed.R.Evid. 609(a)(2); *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989). Wilson's crimes called into question his willingness to be an honest witness. His life sentence meant that the threat of a perjury prosecution could not deter him from lying, and his lack of assets meant that malicious-prosecution or abuse-of-process litigation likewise held no terror for him. But Wilson sought to keep the *identity* of his crime from the jury's knowledge, lest the "cop killer" label inflame the jury against him. *Old Chief v. United States*, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), shows that Wilson's was a reasonable request. Nonetheless, the judge denied the motion *in limine*, and when the trial began Wilson tried to make the best of his situation. His lawyer told the jury during his opening statement why Wilson was in custody and tried to use this to Wilson's advantage by arguing that Williams attacked Wilson because of the nature of Wilson's crime. Although Wilson's lawyer used the nature of the crime circumspectly, Williams's counsel had no reservations about the subject and invited the jury to rule against Wilson on emotional grounds. Practically the first words of counsel's opening statement were:

I'd like to reintroduce the litigant, Jackie Wilson, cop killer, murdered a Chicago police officer who was on duty, Officer O'Brien. He also robbed Officer O'Brien. He was convicted of that. He also robbed Officer O'Brien's partner, Officer Fahey. He was also convicted of that. And, yes, that is the crime he was waiting trial on back in 1988 in the Cook County Jail.

Throughout the trial, Williams's lawyer did not miss an opportunity to remind the jury that Wilson had committed a despicable

offense, and therefore must be a despicable person who should not collect a dime. Defense counsel was not satisfied with a suggestion that the jury should consider the conviction in connection with Wilson's credibility as a witness. The nature of the crime colored the trial. "Cop killer" was the refrain; defense counsel was inflammatory throughout; neutral language such as "criminally accountable because he participated in a robbery during which his brother Andrew shot two men" did not pass counsel's lips.

Wilson did not object to defendant's telling the jury that he had been convicted of killing a police officer; by the time defense counsel stood up Wilson was hardly in a position to object, having provided that information himself. But he did argue on appeal that the judge should have granted the motion *in limine* and put the subject off limits to both sides. The majority of the panel concluded that failure to object at trial forfeited any opportunity to raise the issue on appeal; that the anticipatory use of the information affirmatively waived any entitlement to its exclusion; and that any error was harmless. The dissenting judge concluded that objection at trial was unnecessary, given the ruling *in limine*, and that the error was prejudicial. Although this may seem impossible, the court en banc concludes that both the majority and the dissent were fundamentally correct, and we affirm for a combination of the reasons given by both the majority and the dissent.

■ First in sequence is the question whether an objection at trial was necessary, given the district court's pretrial ruling that Williams would be allowed to inform the jury that Wilson had been convicted, not simply of murder, but of killing a police officer. As the panel recognized, this court's precedents are in conflict. On the one hand, *United States v. York*, 933 F.2d 1343, 1360 (7th Cir. 1991), holds that an objection at trial is necessary no matter how definitive the pretrial ruling may be. On the other

hand, *United States v. Madoch*, 149 F.3d 596, 600 (7th Cir.1998), holds that although conditional rulings require further action at trial, definitive ones do not. Most cases in this circuit reach a conclusion similar to that of *Madoch*. E.g., *Favala v. Cumberland Engineering Co.*, 17 F.3d 987, 991 (7th Cir.1994); *Stutzman v. CRST, Inc.*, 997 F.2d 291, 298 (7th Cir. 1993); *Allison v. Ticor Title Insurance Co.*, 979 F.2d 1187, 1200 (7th Cir.1992); *Cook v. Hoppin*, 783 F.2d 684, 691 n. 2 (7th Cir.1986). An amendment to Fed. R.Evid. 103 that would resolve this disagreement, and provide that objection at trial is not necessary if the pretrial ruling is definitive, is wending its way through the long process under the Rules Enabling Act. See 181 F.R.D. 133 (1998). As it stands, however, Rule 103 is silent on the subject; we must formulate our own approach rather than appeal to authority or decide whether the pending amendment is the best solution.

■ One good example of a conditional ruling is a judge's statement that, if a litigant testifies, then the adverse party will be entitled to cross-examine in such-and-such a way. Until the condition has been satisfied by the testimony, the ruling has no effect. It is impossible to determine on appeal whether the ruling made a difference unless the witness does testify and the unfavorable evidence is admitted; what is more, there is a risk that the witness did not plan to testify even if the ruling had been favorable, but sought only to create an issue for appeal. In circumstances like this, the litigant must satisfy the condition in order to present the claim on appeal. *Luce v. United States*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). Similarly, if the judge's pretrial ruling is tentative—if, for example, the judge says that certain evidence will be admitted unless it would be unduly prejudicial given the way the trial develops—then later events may lead to reconsideration, and the litigant adversely affected by the ruling must raise the subject later so that the

judge may decide whether intervening events affect the ruling. An appeal in such a case without an objection at trial would bushwhack both the judge and the opponent. Objections alert the judge at critical junctures so that errors may be averted. When a judge has made a conditional, contingent, or tentative ruling, it remains possible to avert error by revisiting the subject.

Definitive rulings, however, do not invite reconsideration. When the judge makes a decision that does not depend on how the trial proceeds, then an objection will not serve the function of ensuring focused consideration at the time when decision is best made. A judge who rules definitively before trial sends the message that the right time has come and gone. An objection is unnecessary to prevent error, and it may do little other than slow down the trial. Sometimes an objection or offer of proof will alert the jury to the very thing that should be concealed. Suppose the judge had ruled that the identity of Wilson's victim was *not* to be brought out at trial. Would Williams have been required to do so anyway, letting the cat out of the bag, in order to preserve the claim of error for appeal? Motions *in limine* are designed to avoid the delay and occasional prejudice caused by objections and offers of proof at trial; they are more useful if they can serve these purposes, which they do only if objections (and offers of proof) can be foregone safely.

Treating a definitive ruling as sufficient to preserve the litigant's position for appeal also avoids laying a trap for unwary counselors. Many lawyers suppose that it is enough to raise an issue once and receive a definitive ruling. They may believe that raising the question again may annoy the judge. Rules of procedure should be as tolerant as is practical of lawyers' suppositions and omissions. When the function of an objection has been served via a motion and ruling before trial, requiring repetition at trial does little to advance the goals of vindicating rights and avoiding errors, but may create an opportunity for rights to be lost by inadvertence. Instead of laying snares, we adopt an approach that tolerates human failings. Lawyers can concentrate their mental energies on subjects that are more pressing or have yet to be dealt with, without the need to harp on issues that have been resolved.

Conclusive pretrial rulings on evidence serve another useful end: they permit the parties to adjust their trial strategy in light of the court's decisions. Wilson wanted to keep the occupation of his victim out of the case, but if this could not be accomplished he wanted to introduce the evidence himself, if only to draw its sting. Sensible adaptations could not be accomplished if Wilson had to wait until Williams offered the evidence, and then raise an objection, acting in the jury's eyes as if he had something to hide. Waiting, objecting, and only then trying to make something of the subject not only would divest Wilson of the initiative but also would deprive him of an alternative theory of the case.

 Trial-time adaptations are benefits of pretrial rulings on evidence, so it follows that adaptations do not waive positions already staked out. Wilson did not surrender his objection by making the best he could of his situation after the judge's adverse ruling. See *Judd v. Rodman*, 105 F.3d 1339 (11th Cir.1997). Although some courts have held that a litigant who loses an evidentiary ruling and then offers the evidence himself has waived any opportunity to complain about the decision *in limine*, see *United States v. Williams*, 939 F.2d 721, 723 (9th Cir.1991); *Gill v. Thomas*, 83 F.3d 537, 540 (1st Cir.1996), this approach gives up one of the principal benefits of the pretrial-ruling procedure, and we therefore do not follow it. Our conclusion that preemptive use of evidence does not waive an established objection is compatible with *United States v. DePriest*, 6 F.3d 1201, 1209 (7th Cir.1993), which held that a defendant gives up his objec-

tion by making use of the evidence *before* the district judge renders a definitive ruling. Until a conditional or tentative decision has been made definitive, it is subject to reconsideration, and the party must preserve his position at trial. But once the ruling is definitive, the function of the objection requirement has been served, and both parties are entitled to formulate trial strategies that make the best use of the evidence that the judge has decided to admit or exclude. We overrule *York* to the extent it holds that an objection at trial is invariably required to preserve for appeal arguments that were fully presented to the district court before trial.

A vital qualification is implicit in this way of putting the conclusion. Only arguments that were actually presented to the district court before trial are preserved for appeal—and then only if the district judge came to a definitive conclusion. A judge who expresses a tentative or conditional ruling can by that step require the parties to raise the issue again at trial. District judges thus are fully in charge of the process; they can require or excuse further exchanges on a subject by the way they express their rulings. A judge would do well to explain in the decision proper (or in the final pretrial conference) whether the conclusion is definitive, and whether consideration at trial is required, appropriate, or forbidden; the majority of the panel sensibly pointed out advantages to such a procedure; but if the judge does not elaborate, then we assume that an apparently unconditional ruling is conclusive.

■ Even if the ruling is unconditional, however, it resolves only the arguments actually presented. That much is clear from Fed.R.Evid. 103(a)(1), which requires a litigant to state a specific ground for an objection to evidence; grounds not presented cannot be raised later, else both judge and adversary are sandbagged (and preventable errors occur). There's a corollary to this point: a pretrial objection to and ruling on a particular *use* of evidence does not preserve an objection to a differ-

ent and inappropriate use. Thus if the judge decides before trial that particular evidence can be used for impeachment, then there is no need to object at trial to this use; but a completely different use of the evidence is not covered by the ruling, and therefore fresh attention at trial (prompted by an objection) is essential if the error-prevention function of the contemporaneous-objection rule is to be achieved.

■ This is where Wilson's appeal founders. The district judge, asked before trial to forbid *all* reference to the occupation of the murder victims, said no. This meant at a minimum that Wilson could be cross-examined about the conviction when he testified on his own behalf. It also implied that Williams could present the testimony of another guard, Officer Cavallone, that Wilson stated during a trip to the infirmary after the altercation: "[Y]ou should have killed me when you had the chance. I already killed two Chicago police officers. My attorney is going to have a field day with this. I have no respect for the law. And the next thing we are going to do is take care of the blue shirts [guards] inside the jail." Williams offered this statement to corroborate his view that Wilson had a hostile and aggressive attitude, and either initiated the altercation or planned to invent a story for his attorney to have a "field day" with. Wilson denies saying any such thing to Cavallone, and he wanted the line "I already killed two Chicago police officers" redacted. The judge did not require this step. But beyond permitting Cavallone to testify to the full version of the statement, and permitting the use of the conviction to call Wilson's credibility as a witness into question, the ruling *in limine* did not sanction any particular use of evidence. In particular, the judge did not give Williams's counsel permission to introduce Wilson as a "cop killer," to describe the details of the crime, to seek sympathy for Wilson's victims, or to imply that people who commit heinous offenses are fair game in prison—all of

which Williams's lawyer did, and without objection. The pretrial ruling did not say or imply that such uses (or misuses) of the evidence would be allowed. We reversed the verdict for defendants in the first trial of Andrew Wilson's § 1983 action precisely because defense counsel harped on the details of the murders and sought an emotional rather than reasoned evaluation of the facts. The defense strategy in Jackie Wilson's second trial was similar to that in Andrew Wilson's first—but the big difference is that Andrew Wilson's lawyers objected, and Jackie Wilson's did not. *Misuse* of evidence that has a proper use cannot be argued on appeal without a specific objection. See Fed.R.Evid. 103(a)(1).

A pretrial ruling is definitive only with respect to subjects it covers. Details of usage were not raised or resolved before trial. If the only problem were that Williams's counsel once said "cop killer" rather than a more neutral formulation, or repeated the statement when using the conviction for impeachment, we would be reluctant to say that objection has been forfeited. Misuse of evidence is a matter of degree, and litigants receive the benefit of the doubt in grey areas. But defense counsel strummed on "cop killer" as if it were a guitar rather than a bit of evidence; whatever line there was between proper and improper use was overstepped; objection never came, so forfeiture occurred and the plain-error standard governs. Fed. R.Evid. 103(d).

■ Plain error means an error that not only is clear in retrospect but also causes a miscarriage of justice. *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Wilson has not persuaded us that justice miscarried in his trial because of the way Williams used Wilson's crime. Blatant efforts to manipulate jurors' emotions and persuade them to ignore the facts and instructions often backfire. Wilson may have withheld objection in the hope that jurors would deem that Williams had overplayed his hand. Moreover, Wilson might have thought that Williams's efforts to hammer away on the cop-killer theme showed animus, and thus made Wilson's accusation against Williams more credible. Wilson had a weak case on damages, and success on liability depended on the resolution of a credibility contest. How the balance of advantage from the overuse of the cop-killer theme plays out in such a trial is difficult to say. The effects are not so inevitably baleful to the truth-finding function of trial that the problem must be deemed "plain error."

■ At last, in what must appear to be an afterthought, we tackle the issue that *has* been preserved: whether the district judge should have ruled before trial that the nature of Wilson's crime is inadmissible. As the Supreme Court observed in *Old Chief*, the precise identity of a crime often creates a potential for prejudice that overwhelms its constructive value. Any legitimate use of the conviction by the defense would have been served by informing the jury that Wilson has been convicted of murder and sentenced to life imprisonment. The judge thus abused his discretion in denying the motion outright. But at oral argument before the court en banc, Wilson's lawyer disclaimed any contention that the district judge should have barred Cavallone from testifying that Wilson said "I already killed two Chicago police officers." With this statement in evidence, the district judge's error with respect to the *Old Chief* issue is harmless. Williams's harping on the subject, and his implication that "cop killers" are not entitled to damages when guards behave as vigilantes, could not be thought harmless, but the lack of objection means that the misuse of the evidence has not been preserved for appellate review. As a result, the judgment is

AFFIRMED.

COFFEY, Circuit Judge, concurring in part and dissenting in part.

On May 3, 1989, the plaintiff-appellant Wilson was convicted of the armed rob-

bery and murder of one Chicago police officer and of the armed robbery of a second Chicago police officer. More than one year later, on July 9, 1990, Wilson filed this § 1983 action, alleging that he was assaulted by the defendant-appellee Williams, a prison guard in the Cook County, Illinois, Jail, and furthermore that the assault constituted a violation of his due process rights under the Fourteenth Amendment. The district court granted Williams' motion for summary judgment and made note of the fact that the physician who examined Wilson had stated in his medical report that Wilson's injuries were only "superficial" in nature, that "being kicked ... would involve more extensive injuries than what [was] present," and that if Wilson "had received a significant blow or trauma ..., one would expect to see some evidence of traumatic degree." This Court reversed the granting of the summary judgment motion on the grounds that genuine issues of material fact existed as to whether Wilson had initiated the fight with Williams and remanded the case for trial. *See Wilson v. Williams*, 997 F.2d 348 (7th Cir.1993). At the new trial, the jury rendered a verdict for Williams, and Wilson appealed a second time, and this Court reversed a second time, holding that the trial judge had committed error in giving a confusing "good faith" defense instruction. *See Wilson v. Williams*, 83 F.3d 870 (7th Cir.1996). Once again, the case was remanded to the district court for a new trial, and approximately three months prior to trial, Wilson filed a motion *in limine* seeking to exclude any evidence of his prior criminal murder conviction. The trial judge ruled that the jury could hear evidence of the prior murder conviction for impeachment purposes only, including the date, time, conviction, and employment of the victim. Just prior to his opening statement, Wilson's counsel renewed his objection to the introduction of any evidence dealing with the fact that the murder victim was a Chicago police officer.

The trial judge again denied Wilson's motion *in limine* to bar evidence of his prior murder conviction. Wilson's counsel proceeded with his opening statement and referred to the fact that his client Wilson was a "cop killer." Later, upon questioning by his counsel during direct testimony, Wilson testified that he had been convicted of murder and armed robbery. Then, on cross-examination, Williams' counsel asked Wilson whether he had been convicted of murdering a Chicago police officer. The plaintiff Wilson's counsel failed to object to this question, and Wilson responded in the affirmative. Just before the case went to the jury, Wilson's counsel again brought up his client's prior convictions for murder and armed robbery and specifically referred to him as a "cop killer" in so many words no less than seven times during closing argument. The jury returned a verdict for the defendant Williams, and Wilson once again appealed, taking his third bite from the apple. This Court affirmed the conviction in a two-to-one panel majority decision, concluding that: (1) Wilson waived his objection to the introduction of evidence regarding his murder victim's occupation by *failing to renew his motion in limine during trial* and by *failing to timely object when the disputed evidence was introduced through the testimony of a prison guard who heard Wilson comment: "I already killed two Chicago police officers.... I have no respect for the law. And the next thing we are going to do is take care of the blue shirts [prison guards] inside the jail"*;[1] (2) Wilson waived his objection by *preemptively informing the jury on eight occasions at trial of the very evidence that he wanted to exclude, including using it for his own strategic purposes in his closing argument*; and (3) the trial court did not commit error in *admitting evidence regarding Wilson's prior victims. Wilson v. Williams*, 161 F.3d 1078, 1080–81 (7th Cir. 1998) (emphases added).

1. Wilson denied making this statement.

Thereafter, the Court, upon petition, voted to hold an *en banc* hearing and the majority, in affirming the prior panel's holding, concluded that the trial court did not commit error in admitting evidence regarding Wilson's prior victims and that Wilson waived his objection by failing to timely object when the disputed evidence was introduced. In fact, the majority draws heavily from the panel decision and holds, as we pointed out, that

> [p]lain error means an error that not only is clear in retrospect but also causes a miscarriage of justice. *United States v. Olano*, 507 U.S. 725, 736[, 113 S.Ct. 1770, 123 L.Ed.2d 508] (1993). Wilson has not persuaded us that justice miscarried in his trial because of the way Williams used Wilson's crime.... Wilson may have withheld objection in the hope that jurors would deem that Williams had overplayed his hand.

In commenting on Wilson's failure to object to the introduction of evidence that he was a "cop killer," the majority also notes, as made clear in the prior panel's opinion, that "the lack of objection [by Wilson's attorney] means that the misuse of the evidence has not been preserved for appellate review." I concur with the majority's holding on both grounds. However, after writing for the majority in the panel opinion, I am now forced to dissent only from that part of the *en banc* majority wherein it concludes "that a definitive ruling *in limine* preserves an issue for appellate review, without the need for later objection—but this is a presumption, subject to variation by the trial judge, who may indicate that further consideration is in order." In so holding, the majority rejects the panel's conclusion, *and that of six of our sister circuits*, holding that a party whose pre-trial *in limine* motion has been denied *must* renew his objection when the evidence the party sought to prevent is about to be introduced at trial, regardless of the judge's pretrial ruling.

The original panel's holding concerning *in limine* motions is based on this Circuit's decision in *United States v. York*, 933 F.2d 1343 (7th Cir.1991), as well as the majority of circuits referred to. In *York*, we held that an *in limine* motion must be renewed at trial or the objection is waived: " '[a] party whose motion *in limine* has been overruled *must* object when the error the party sought to prevent is about to occur at trial.' " *Id.* at 1360 (citation omitted) (emphasis added). The rule in *York* is preferable because, in the interest of justice and fair play, a court must have the flexibility to reconsider the denial of a prior *in limine* ruling, which is hopefully not cast in stone, if other material evidence is received later in the trial which gives the trier of fact cause to pause and reconsider his earlier ruling. The *York* and panel decisions comport with the Supreme Court's presently ruling case law analysis in *Luce v. United States*, 469 U.S. 38, 41, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), which mandates that an *in limine* ruling is merely *speculative* in effect, completely dependent upon what happens at trial. As stated by the nine wise men and women now gracing our country's highest bench on the Potomac River, "[t]he ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id.* at 41–42, 105 S.Ct. 460.

> A motion *in limine* is a **request for guidance by the court regarding an evidentiary question**. The trial court **may**, within its discretion, **provide such guidance by making a preliminary ruling with respect to admissibility**. The parties may then consider the court's ruling when formulating their trial strategy. However, we see no reason why the trial court could not change its ruling, for whatever reason, when the evidence is actually offered and objected to at trial. **A ruling on a motion in limine is therefore essentially an advisory opinion** by the trial court.

*United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir.1983), *aff'd*, 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (citations omitted) (emphases added). Other courts have adopted the reasoning in *Luce* that *in limine* rulings are preliminary: "An *in limine* evidentiary ruling does not constitute a final ruling on admissibility.... Th[is] rule is a practical one. There is no reason to spend scarce judicial resources reviewing a decision that may be changed due to developments at trial." *Palmieri v. Defaria*, 88 F.3d 136, 139 (2nd Cir.1996) (citation and internal quotations omitted). "[A]ny possible harm flowing from the *in limine* ruling is wholly speculative because a trial court, exercising sound judicial discretion, may always alter such rulings as the case unfolds." *United States v. Nivica*, 887 F.2d 1110, 1116 (1st Cir.1989) (citation and internal quotations omitted). Thus, regardless of what counsel might infer from the judge's wording when he makes an *in limine* ruling, that decision is only *preliminary*. *See Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1342 (9th Cir. 1985). Once again, I endorse *York* because I am convinced that a court may and should, either upon proper motion or even *sua sponte*, be allowed to reconsider and possibly reverse or affirm the denial of a prior *in limine* ruling if other material evidence is subsequently received in the trial that causes the trier of fact to pause and reflect, in the interest of justice and fair play, and reconsider the earlier ruling.

In rejecting this precedent, the majority proposes that certain *in limine* motions, those that are "qualified," be renewed prior to the introduction of the evidence in question, and other *in limine* motions, those that are "definitive," need not be renewed. Such a proposal would create an odd schism in the law.[2] I find it hard to understand, as the author of the majority opinion writes, how a trial judge should somehow be expected to look into his crystal ball and, by court rule, be bound to make a "definitive," all-encompassing ruling prior to the reception of any, much less all, of the evidence. Such a determination would clearly be based only on what was considered and referred to at preliminary pre-trial conferences. Based on my twenty-plus years of trial experience, I seriously question whether the rule proposed by the majority is entitled to life.[3] The term "definitive" is not well adapted to use in the rules of evidence. According to the American Heritage Dictionary, "definitive" is "precisely defining or outlining; explicit"—it is somewhat difficult to at best speculate on how such a term could be applied to a trial judge's ruling on an *in limine* motion. 375 (2d ed.1982). Furthermore, the distinction the majority advocates is not even addressed in the holding in *Luce*, 469 U.S. at 41–42, 105 S.Ct. 460, which reads:

> Any possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative. The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling.

All that the United States Supreme Court requires in *Luce* is that *in limine* motions

**2.** Additionally, the majority's admonition that "a judge would do well to explain in the decision proper (or in the final pretrial conference) whether the conclusion is definitive, and whether consideration at trial is required, appropriate, or forbidden," seems to build in even more problems and unduly complicate the trial. Would it not be more expedient to place the burden on attorneys to simply repeat objections at trial?

**3.** Frequently, the attorney who appears at pretrial conference is different from the trial attorney. How can the pretrial conference attorney be expected to know what will come up at trial unless he too has the latest, computerized crystal ball?

be repeated during trial. An experienced trial judge will allow and, more often than not, order that any repeated motion and/or argument be heard in the absence of the jury. The *Luce* Court went on to state that an *in limine* ruling, by its very nature, is **always speculative** in effect— "speculativeness" is the essence of any *in limine* ruling. *See id.* This reading of *Luce* is reinforced by the Supreme Court's use of the language "even if nothing unexpected happens at trial." *Id.* With the use of this language, the Supreme Court seems to be referring to those situations wherein the trial court, having ruled on an *in limine* motion, did not anticipate changing its mind as trial unfolded. In other words, this language seems to take into account **all** *in limine* rulings. Because *Luce* stands for the proposition that a trial judge's ruling on an *in limine* motion can and ofttimes does change from the time of the commencement of the trial to its end, as in *York*, I am convinced that the ends of justice would be best served by requiring attorneys to repeat their pretrial *in limine* objections at trial (prior to the introduction of the questionable evidence). Since, all too frequently, it is impossible to determine from the very language of the court's ruling whether the ruling is "qualified" or "definitive," it is unfair to place attorneys in situations where they must speculate, worry, and/or guess as to the nature of the judge's ruling. The term "definitive" could be more specific and detailed, and the majority's proposal places the onus on the attorney to question the judge (which may be considered by many attorneys to be a more onerous burden than the repeating of a prior motion) or speculate as to whether the ruling is a final ruling. Even if a judge somehow issues a "definitive" ruling, the evidence in question may be received during trial for a purpose different than that originally anticipated, thus altering the conditions upon which the earlier-granted "definitive" ruling was made. The majority's proposal thus has the effect of "boxing in" the trial judge to an earlier-stated "definitive" ruling. Furthermore, I am not convinced that the Supreme Court will accept the majority's new dichotomy which, in my view, may amount to nothing more than a response to the ever-growing lobbying influence of trial lawyers—a group whose goals do not always rise to the level of what is in the best interest of justice for the litigants in our overburdened legal system.

This said, the *in limine* ruling in this case, as with all *in limine* rulings, was provisional and clearly within the ambit of *Luce*. Wilson's attorney obviously was under the impression that the judge's ruling was provisional, for he continued to repeat the evidence he previously sought to exclude and repeatedly referred to the hot-button phrase "cop killer" some **eight different times** during trial. Also, either he thought the ruling was provisional and was hoping the judge would change his mind concerning his prior ruling, or he was attempting to take the sting out of evidence he believed would ultimately be introduced at trial by Williams by raising the evidence himself.

The rule in *York* is the controlling case law in the majority of circuits (7) across the country. The First Circuit has held: "Merely making an unsuccessful motion in limine to exclude evidence is insufficient to preserve a claim of error; the protesting party ordinarily must revivify his opposition at the time the evidence is offered." *United States v. Joost,* 133 F.3d 125, 129 (1st Cir.1998) (citation omitted). The Second Circuit, writing on the *in limine* issue, has stated: "When the district court denied [the defendant's] *in limine* motion to exclude all evidence of [the death of an individual to whom he sold heroin], it did not thereby relieve ... counsel of the obligation to object whenever specific inflammatory statements were made at trial." *United States v. Birbal,* 62 F.3d 456, 465 (2nd Cir.1995). The Tenth Circuit has noted: "A party whose motion in limine has been overruled must nevertheless object when the error he sought to prevent by his motion occurs at trial." *McEwen v. City*

*of Norman, Okla.,* 926 F.2d 1539, 1544 (10th Cir.1991). A number of other circuits have reached similar conclusions: " '[A] party whose motion in limine has been overruled must object when the error he sought to prevent with his motion is about to occur at trial.' " *Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492, 1504 (11th Cir.1985) (quoting *Collins, infra*). *See also Hale v. Firestone Tire & Rubber Co.,* 756 F.2d 1322, 1333 (8th Cir. 1985); *Collins v. Wayne Corp.,* 621 F.2d 777, 785 (5th Cir.1980) ("[A]n objection is required to preserve error in the admission of testimony or the allowance of cross-examination even when a party has unsuccessfully moved in limine to suppress that testimony or cross-examination.").

> [T]he confusion generally surrounding preservation of appeal rights with respect to motions *in limine* mandates that, absent clear authority in a given jurisdiction, counsel treat all rulings, no matter how couched, as preserved only through objection or offer of proof made at trial. Obviously, with respect to preliminary motions *in limine*, no other conclusion is possible.

Michael H. Graham, *Rulings on Admissibility of Evidence Outside the Hearing of the Jury—Motions in Limine,* 17 Crim. L. Bull. 60, 68 (1981). *See also* Johnny K. Richardson, Comment, *Use of Motions in Limine in Civil Proceedings,* 45 Mo. L. Rev. 130, 138 (1980). The highly respected evidentiary commentator, Jack B. Weinstein, has stated: *"If a party has raised an objection before trial by means of a motion in limine that the court has denied, most courts hold that the objection must be renewed at trial for the objection to be preserved for appeal."* Weinstein's Federal Evidence § 103.11[2][b] at 103–16 (1997 ed.) (emphasis added). *See also* 1 Michael H. Graham, *Handbook of Federal Evidence* § 103.8 at 50 (4th ed. 1996) (*"To preserve error for appeal, counsel most often will be required to and thus to be safe should either renew the objection or make an offer of proof at trial."* (emphasis added)). Such actions on the part of trial counsel only serve to create a more complete and accurate record for the reviewing courts in our never-ending search for justice.

The author of the proposed majority *en banc,* without any reasoning, has cast aside *York* and refuses to recognize the extent of the broad-based support the circuit courts' majority view expressed in *York* has received throughout the country and, on the other hand, attempts to bolster his argument by bootstrapping and pointing out that the Advisory Committee on the Rules of Evidence is currently amending Fed. R.Evid. 103 to provide that the renewal of the objection at trial is not necessary. This type of bolstering is of little value, for it is impossible to predict when or whether the Advisory Committee's proposals, if ever, will be approved by the United States Supreme Court and/or the U.S. Congress. On the other hand, if the suggested rule does become law, then this Circuit, along with the other six circuits which have endorsed and continue to follow the view adopted in *York* and have obviously found it most helpful in conducting well-orchestrated trials, will be free to adjust their decisions in the future. The rule-making process can often be derailed when the well-educated, reasoned minds of the Supreme Court weigh in, and what are predicted to be quick changes can be short-circuited.

The new majority opinion goes on to argue that attorneys may be hesitant to continue raising objections at trial for fear that they will "annoy the judge." I query the majority whether an attorney would similarly be "annoying" the judge when asking him to explain his ruling and whether it is "qualified" or "definitive"? In deference to the drafters of the amended rules, including those who may not have had the benefit of trial experience, even if Wilson's counsel had believed that the judge had issued a "definitive" *in limine* ruling, any qualified trial counsel would be well advised to ask the presiding judge for

a clarification concerning whether he should restate his *in limine* motion prior to the introduction of evidence at trial. Repeating the objection gives the trial judge an opportunity to review his earlier ruling based upon the totality of the evidence received up to that point and flags it for the attention of the appellate tribunal. Furthermore, "[c]ounsel has a duty to object, and even at the risk of incurring the displeasure of the trial court, to insist upon his objection." *United States v. Warner*, 855 F.2d 372, 374 (7th Cir.1988) (citation and internal quotations omitted). In fact, the same Committee that has recommended the change in the evidentiary rules even alludes to such a requirement in its commentary, in an attempt to protect itself: "the amendment imposes the obligation on counsel to clarify whether an *in limine* or other evidentiary ruling is definitive when there is doubt on that point." It is a shame that Wilson's counsel was not aware of his obligation to properly and timely object in this case—had he done so, a discussion of this issue would have been unnecessary.

Finally, as we also made clear in the panel opinion, and contrary to the majority's contention, this Court has previously held that "[a] *defendant waives his right to appeal a trial court's pretrial ruling that a prior conviction can be used by the prosecution for purposes of impeachment when the defendant himself brought out the fact of the prior conviction* in his direct testimony." *United States v. DePriest*, 6 F.3d 1201, 1209 (7th Cir.1993) (citation omitted) (emphasis added). In this case, Wilson's counsel repeated and impressed upon the jury that **Wilson was a "cop killer" no less than eight times during the course of the trial**. Though the majority cleverly attempts to distinguish *DePriest* from the circumstances under consideration by stating that the *in limine* ruling in *DePriest* came after the defendant's testimony at issue, the *DePriest* court goes on to state: "*[e]ven if* the ruling had been made prior to the defendant's direct examination, we do not believe that reversible error would

have been committed." *Id.* (emphasis added). Thus, the majority's attempt to distinguish *DePriest* by pointing out that the ruling came after the defendant's testimony is something less than a complete reading of the holding in *DePriest*. In fact, the *DePriest* court goes on to cite as precedent *United States v. Williams*, 939 F.2d 721 (9th Cir.1991), one of the very cases that the majority contends it is rejecting in reaching its conclusion. *See also Gill v. Thomas*, 83 F.3d 537 (1st Cir.1996) (After the trial judge denied the plaintiff's motion *in limine* to exclude evidence of several prior misdemeanors, the plaintiff introduced evidence of the misdemeanors in an attempt to "remove the sting" from the arresting officer's anticipated impeachment testimony; the court held that the attempt to remove the sting "opened the door" to the defendant's cross-examination).

In conclusion, I concur with the majority insofar as it draws from the original panel's decision holding that the trial court did not commit plain error in ruling that Williams' use of the "cop killer" term did not deny Wilson a fair trial and that "the lack of objection [by Wilson's attorney] means that the misuse of the evidence has not been preserved for appellate review." I dissent to the extent that the majority rejects our holding in *York*. According to the theory in *York*, which has been endorsed by the majority (7) of circuits across the country, had Wilson been desirous of preserving his objection to evidence that Wilson had murdered a police officer, he was required to renew his *in limine* motion and object contemporaneously with the reception of such evidence; it was not sufficient to merely rely upon his *in limine* motion. The majority instead proposes that we, following the lead of the Advisory Committee on the Federal Rules of Evidence, establish precedent providing that certain *in limine* motions, those that are "*qualified*," need be renewed prior to the introduction of the evidence in question, and other *in limine* motions, those that

are "*definitive*," need not be renewed. I am not swayed that we must act now so that our jurisprudence coincides with an, at best, anticipatory rule of evidence that may, at some point in futurity, be adopted by the Supreme Court. In addition, I note that Wilson waived his right to appeal on this ground by introducing the jury during his opening statement to the fact that he had been convicted of murdering a police officer, even before Williams made mention of it, by failing to object at either of the two instances that the disputed evidence was elicited by witnesses at trial, and by referencing the disputed evidence seven times so as to make it the focus of his closing argument.

MANION, Circuit Judge, concurring in part, dissenting in part, and concurring in judgment.

I agree with the court that the judgment be affirmed. But I am concerned with the court's attempt to construct a rule distinguishing a definitive and a conditional ruling on a motion *in limine*. At the outset, however, I should note the points of agreement I have with the court. Regarding the merits, I agree with the court that irrespective of the motion *in limine*, Wilson's counsel had the obligation to object to the use of the term "cop-killer" by defense counsel, because the motion *in limine* did not address this issue. I further agree with the court that saying "cop-killer" is not plain error because of the possibility that this evidence would prejudice the jury against Wilson. Even without the "cop-killer" comments, the jury would know that Wilson was in jail, and the jurors would be entitled to know that Wilson had been convicted of murder. Fed.R.Evid. 609(a). This evidence would certainly impinge on Wilson's credibility. But Wilson being a copkiller, instead of just another convicted murderer, offers a unique motive for prison guards singling him out and beating him. Arguably, Wilson's case was stronger with this revenge-motive evidence than without it.

Beyond the facts of this case, however, the rule the court constructs to regulate motions *in limine* may create more problems than it solves. The court concludes a motion *in limine* is definitive when the judge's ruling is not tentative and does not depend on a condition being satisfied. Inevitably this invites satellite litigation over whether a ruling is definitive or conditional.

A pre-trial motion *in limine* serves two valuable purposes. The first is to allow the court and the parties to argue evidentiary issues in detail, avoiding significant delay after a jury has been impaneled. Thereby, when the issue presents itself during trial, counsel need do no more than renew the motion *in limine* (or the objection thereto). If, as the trial evidence develops, the district court is of the same opinion as before trial, the judge merely has to incorporate his reasoning in denying (or granting) the motion *in limine*. This is neither time-consuming nor difficult. The second benefit of the motion is to alert the district court to evidentiary issues which are potentially prejudicial in their nature. Rule 103(c) of the Federal Rules of Evidence already recognizes this concern, and directs district courts to conduct proceedings "so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof ... in the hearing of the jury." A motion *in limine* allows counsel to apprise the district court of these potential issues, so that when (and if) they arise during the proceedings, the district court will be positioned to excuse the jury or call a sidebar if necessary. And if the factual basis of the motion *in limine* was accurate, and the judge sees no need to revisit the issue, the attorneys and court may simply incorporate the motion *in limine* material by reference, without alerting the jury to their substance. Or, if necessary, opposing counsel can make an offer of proof when the jury isn't present. Neither of these purposes are substantially advanced by the court's definitive/conditional test.

I also have concerns over how this court will be able to assess whether a definitive evidentiary ruling made in advance of trial would be sufficiently prejudicial to warrant reversal. When counsel on appeal argues that the case would have been tried in a completely different fashion but for an erroneous ruling on a motion *in limine*, will we have to envision an entirely different trial, and anticipate what the result would have been, in order to determine whether the error was harmless? One alternative, to grant an automatic reversal, would no doubt stop district courts from granting definitive motions *in limine*.

I echo the sentiments of Judge Diane P. Wood in concluding that even now, the prudent practice will be to renew all objections at trial, thus avoiding equivocation over whether the ruling in place will suffice. I also share the concerns of Judge Coffey regarding the practicality of this rule. Very little will change before the district courts, but I expect that this court will face appeals over whether a "definitive" ruling covered evidence entered without objection. I also question establishing a presumptive rule, that motions *in limine* are definitive, when most motions will fall under the conditional exception. In my view, the bright line rule always requiring an objection or offer of proof is the most efficient, most straightforward, and most fair rule that we can adopt.

DIANE P. WOOD, Circuit Judge, with whom RIPPLE, Circuit Judge, joins, dissenting in part.

While I agree with the *en banc* majority on the larger issues of law that this case presents, I am unable to concur with its finding that the errors that infected this trial do not require reversal. I therefore dissent from the disposition of Wilson's appeal.

At the outset, I wish to make clear the points on which I am entirely in agreement with the majority. First, I agree that in a case where the district judge has ruled on a motion *in limine*, further objection at trial is necessary if the ruling was in any sense conditional, but it is not necessary to the extent the ruling was definitive. *Ante* at 565–66. Second, I also agree that, in applying this rule to definitive rulings, it is important to respect the limits of the ruling. *Ante* at 567. If there is an expansion, modification, or other alteration in the predicate upon which the district court based its earlier definitive ruling, counsel must make a separate objection at trial to the altered use in order to preserve that new point on appeal. The boundary between what has been decided definitively and what is new will sometimes be difficult to discern, as Wilson's case illustrates. The court holds today that his lawyer's motion *in limine* preserved his right to appeal the district court's decision to allow into evidence the fact that his victim was a Chicago police officer, but it did not preserve his right to appeal defense counsel's incessant harping on that fact. In some cases, it may be difficult for counsel to know when permissible use is transformed into abusive misuse. Only case-by-case development will throw light on where that line lies, and prudent counsel should certainly err on the side of renewing objections at trial, lest the affected party forfeit valid arguments for appeal.

I also agree with the majority that a party faced with a definitive ruling on a motion *in limine* does not forfeit the right to object to evidence when she tries to make the best of a bad situation. *Ante* at 566–67. Wilson's lawyer therefore had the right to introduce the fact that he was not only a convicted murderer, but a convicted murderer of a Chicago police officer. This also justified Wilson's effort to make strategic use of that damning information, by suggesting that the identity of his victim might have inspired Williams's allegedly unprovoked attack on him.

The place where I part company with the majority is in its application of these rules. To begin with, it is important to

remember that there are two separate potential sources of reversible error in this case: the introduction of evidence concerning the victims of Wilson's crimes and the misuse of this evidence. With respect to the latter, because Wilson's failure to object to the improper use of the victim identity evidence led him to forfeit this point, *ante* at 568, the question is how his appeal fares under the plain error standard of review of Fed.R.Evid. 103(d). A review of this transcript leaves no doubt that the error is clear in retrospect, and I do not understand the majority to assert otherwise. That leaves the question whether this was an error that "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings," and thereby caused a miscarriage of justice. See *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (internal quotations deleted). In a brisk paragraph, the majority concludes that it did not, based solely on the fact that Wilson succeeded in finding a strategic use for the offensive information. *Ante* at 568. But this conclusion loses sight of the very point that lies behind the finding of forfeiture: far more was going on here than the simple act of making sure the jury knew what Wilson had done. Instead, defense counsel openly, repeatedly, and blatantly urged the jury to find against Wilson because of what lay in his past. The misuse of the evidence was so extreme and so pervasive that, even though Wilson forfeited his objection, I would find plain error and reverse on this ground.

Even if the misuse of the victim identity evidence did not rise to the level of plain error, there would remain the question whether the district court committed reversible error in permitting defense counsel to use the evidence at all. Here too, I agree with the majority at the beginning of its analysis, but not at the end. The district court abused its discretion in denying the motion *in limine* outright, because as the majority points out, any legitimate use of the conviction would have been served by informing the jury that Wilson had

been convicted of murder and sentenced to life imprisonment. *Ante* at 568. Nevertheless, according to the majority, the fact that Wilson's lawyer at oral argument was not urging us to find that the judge should have barred Officer Cavallone from testifying that Wilson had proclaimed "I already killed two Chicago police officers," means that the district court's error was harmless. *Ante* at 568. In my view, however, this misunderstands the scope of counsel's comment at oral argument. The question we must ask is whether counsel would have objected to that part of Officer Cavallone's account if the judge had granted the motion *in limine* at the outset. To do otherwise would undermine the central holding of the majority opinion, that an objection at trial is unnecessary to preserve for appeal an issue addressed in a definitive *in limine* ruling. Given the wording of the *in limine* motion, I believe that the damaging statement would have been improper. Wilson's lawyers asked that "all evidence of Wilson's criminal conviction for Murder, together with all reference to those criminal proceedings and to any of the underlying conduct" be excluded from the trial. Accordingly, if the motion *in limine* had been granted (even if it had been limited to references to victim identity), as it should have been, Wilson's lawyer would have had a ground on which to object to Officer Cavallone's statement and likely would have done so. There is no question that Wilson's lawyer would have preferred to have tried this case without any mention at all, through Officer Cavallone or anyone else, about the identity of Wilson's victim. Under the proper perspective, I do not regard the error as harmless. Furthermore, again harking back to the theme of most of the majority's opinion, there is an important distinction between a single mention of the identity of the victim and an incessant mantra. From that perspective as well, the error that opened the door to the mantra cannot be regarded as harmless.

Despite my agreement with the broad principles concerning motions *in limine* that the majority announces, I would therefore reverse the judgment and remand for a new trial, and I respectfully dissent from the outcome here.