# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KALALA SHONI,

        Defendant-Appellant.

UNPUBLISHED
July 31, 2018

No. 338964
Kent Circuit Court
LC No. 15-011580-FH

Before: MURRAY, C.J., and MARKEY and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his conviction by a jury of third-degree criminal sexual conduct in violation of MCL 750.520d(1)(b) for which he was sentenced to two to 15 years' imprisonment. We affirm.

Defendant and the victim met on the application, Tinder.[1] The two engaged in flirtatious and sexually explicit communications on Tinder and via text messages and decided to meet. On the night of October 29, 2015, defendant met the victim and took her to his house where they went into his bedroom and laid down on his bed to watch television. The victim testified that although she kissed defendant and took her shirt off, defendant went further without her consent. According to the victim, contrary her protests, defendant pulled her pants down, forcefully held her legs down, and penetrated her vagina, once with his fingers and twice with his penis. The victim testified that she repeatedly told him "no" but that she could not stop him. Immediately after the last penetration, while the two were lying in bed, defendant asked the victim if she was going say that he raped her, to which she said "no." Afterward, the victim texted her father for a ride, and defendant took her to meet him at a nearby restaurant.

The victim did not immediately report the incident to her father or to the police. A few days later, she attempted suicide and went to a psychiatric hospital where she received treatment

---

[1] Tinder is a social networking, dating/"hook-up" application. See Praschma, *New-Age Discrimination: Determining Whether Tinder Plus's Price Is Right*, 17 J High Tech L 372, 373-374, 407 (2017).

for five days.[2] After her discharge, she talked to counselors at the YWCA, who recommended that she report the incident. On November 11, 2015, the victim reported the incident to the Walker Police Department.

Before trial, defendant moved to compel the prosecution to produce the victim's privileged medical and psychological records and requested that the trial court conduct an in camera review of her records. The trial court denied the motion. Defendant also moved to exclude the testimony of an expert witness whom the prosecution intended to call to testify regarding delayed reporting by sexual assault victims following an assault. The trial court also denied that motion but without prejudice.

## I. MEDICAL RECORDS

On appeal, defendant argues that the trial court erred by denying him the victim's medical and psychological records and by refusing to conduct an in camera review. We disagree.

We review for an abuse of discretion a trial court's decision to conduct or deny an in camera review of privileged records in a criminal prosecution. *People v Davis-Christian*, 316 Mich App 204, 207; 891 NW2d 250 (2016). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes or when it erroneously interprets or applies the law." *Id*. (quotation marks and citation omitted).

In *Davis-Christian*, 316 Mich App at 207-209, we recently explained the burden that a defendant bears to establish a right to in camera review and use of a sexual assault victim's privileged treatment records:

> "Discovery should be granted where the information sought is necessary to a fair trial and a proper preparation of a defense." *People v Laws*, 218 Mich App 447; 452, 554 NW2d 586 (1996). Nevertheless, defendants generally have no right to discover privileged records absent certain special procedures, such as an in camera review of the privileged information conducted by the trial court. MCR 6.201 (c)(1) and (2). In a criminal sexual conduct prosecution, an in camera review "promotes the state's interests in protecting the privacy rights of the alleged rape victim while at the same time [it] safeguards the defendant's right to a fair trial." *People v Hackett*, 421 Mich 338, 350; 365 NW2d 120 (1984).
>
> [*People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994),] explained the proper procedure a court must use to determine whether to grant an in camera review of privileged material:

---

[2] While the jury initially was informed of this suicide attempt, it was later instructed "not to consider [the suicide attempt] at all relative to the issues in this case" because "it's entirely irrelevant." While the issue of the victim's hospitalization arose during pretrial proceedings, see note 2, *infra*, the jury was not privy to the fact that the victim was hospitalized.

> [W]here a defendant can establish a reasonable probability that the privileged records are likely to contain material information necessary to his defense, an in camera review of those records must be conducted to ascertain whether they contain evidence that is reasonably necessary, and therefore essential, to the defense. Only when the trial court finds such evidence, should it be provided to the defendant. [*Stanaway*, 446 Mich at 649-650.]

However, the *Stanaway* Court explained that "disclosure should not occur when the record reflects that the party seeking disclosure is on 'a fishing expedition to see what may turn up.' " *Id*. at 680, quoting *Bowman Dairy Co v United States*, 341 US 214, 221; 71 S Ct 675, 95 L Ed 879 (1951). A defendant "is fishing" for information when he or she relies on generalized assertions and fails to state any "specific articulable fact" that indicates the privileged records are needed to prepare a defense. *Id*. at 681. The Michigan Supreme Court amended MCR 6.201(C) in 1996 to reflect the rule announced in *Stanaway*. MCR 6.201, 451 Mich cx, cxi (staff comment).

> MCR 6.201(C)(2) provides in part as follows:
>
> If a defendant demonstrates a good-faith belief, grounded in articulable fact, that there is a reasonable probability that records protected by privilege are likely to contain material information necessary to the defense, the trial court shall conduct an in camera inspection of the records.
>
> (a) If the privilege is absolute, and the privilege holder refuses to waive the privilege to permit an in camera inspection, the trial court shall suppress or strike the privilege holder's testimony.
>
> (b) If the court is satisfied, following an in camera inspection, that the records reveal evidence necessary to the defense, the court shall direct that such evidence as is necessary to the defense be made available to defense counsel. If the privilege is absolute and the privilege holder refuses to waive the privilege to permit disclosure, the trial court shall suppress or strike the privilege holder's testimony.

We explained in *Davis-Christian* that the state's interest in protecting a victim's privacy rights may be overcome only upon a defendant establishing beyond mere generalized assertions that the records contain evidence useful for impeachment or cross-examination. *Davis-Christian*, 316 Mich App at 209-210. We held that the defendant's "hope" of finding corroborating evidence failed to meet the standard articulated in *Stanaway* because the defendant's assertion of need in that case was "untethered to any articulable facts." *Id*. at 213.

In this case, defendant argued that he had a good-faith basis for desiring access to the victim's privileged health and psychological treatment records. His explanation, however,

revealed that he merely "hope[d]" that the medical history she provided to caregivers might reveal admissions or something contradictory to her claim of being sexually assaulted. The record indicates that defendant's rationale rested solely on speculation and failed to meet the *Stanaway* standard, i.e., that it lacked a basis *in articulable fact* establishing a reasonable probability that the privileged records likely contained material information necessary to his defense. Defendant no doubt *hoped* that the medical records could help his case, but he offered nothing of substance to establish that an in camera review likely would reveal admissions beneficial to the defense. The trial court correctly recognized that the law articulated in *Stanaway* and MCR 6.201(C)(2) prevented just this sort of "fishing expedition." Therefore, we hold that under these circumstances, the trial court did not abuse its discretion by denying an in camera review of the victim's privileged medical and psychological treatment records.

## II. EXPERT TESTIMONY

Defendant also argues that the trial court erred by allowing Patricia Haist, the prosecution's expert witness, to testify generally regarding sexual assault victims' delayed disclosures of incidents involving sexual assault on the ground that her testimony served only to vouch for the credibility of the victim in this case. We disagree.

In advance of trial, defendant moved the trial court to preclude Haist from testifying. The trial court denied the motion without prejudice. The court explained that it would render a final decision at the time of trial after it had had an opportunity to hear the rest of the evidence in order to determine if that evidence supported Haist's testimony.

At trial, the prosecution called Haist to testify and after eliciting her background and credentials, asked the court to qualify her as "an expert in the area of victim behavior in sexual assault." The trial court then addressed defense counsel, who replied, "No objection, your Honor."

Thus, to the extent defendant argues that it was error to qualify Haist as an expert witness, that argument is waived, as defendant's express satisfaction with Haist being qualified served as a waiver of that issue, thereby extinguishing any claimed error. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000).

Defendant argues that Haist's testimony, as distinguished from her credentials as an expert, was inadmissible because it did not comply with the requirements of MRE 702, in that it was not helpful to the trier of fact in understanding the evidence or determining a fact in issue. However, that issue is not preserved because defendant failed to object to Haist's testimony.[3]

---

[3] Prior to trial, defendant argued in a motion in limine in the trial court that explaining delayed reporting was not an issue as to which expert testimony would assist the jury because it was clear to the jury *why* the victim had not immediately reported defendant's conduct—the victim had been hospitalized after her suicide attempt. The trial court denied the motion without prejudice, i.e., it allowed defendant to raise the issue later. Indeed, the trial court made it clear that a final resolution would only be made at the time of trial. But when that time came, when the testimony

See *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Accordingly, our review is for plain error affecting defendant's substantial rights. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). To prevail under this standard of review, defendant must show that (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected defendant's substantial rights, which "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Haist's testimony was admitted under MRE 702.[4] But defendant has not shown how the admission of the testimony constituted a clear of obvious error. Indeed, the Michigan Supreme Court has repeatedly held that experts may testify regarding the concept of "delayed reporting" in sexual abuse cases. See, e.g., *People v Kowalski*, 492 Mich 106, 123-124; 821 NW2d 14 (2012); *People v Peterson*, 450 Mich 349, 352-353; 537 NW2d 857 (1995); *People v Beckley*, 434 Mich 691, 716-717; 456 NW2d 391 (1990). Although the caselaw primarily deals with *minor* victims and how it is common for them to delay reporting any abuse, the same rationale can apply to adult victims. The cases hold that experts are allowed to testify regarding a frequent trait amongst abuse victims in order to rebut the laypersons', inconsistent, generally-held views. See *Kowalski*, 492 Mich at 123 ("[V]ictims of . . . sexual abuse sometimes exhibit behavior, such as delayed reporting of abuse or retraction of accusations, that psychologists understand to be common among abuse victims but that jurors might interpret as being inconsistent with abuse.");

---

of Haist was actually offered, defendant did not raise the issue again. Thus, the issue is not preserved. See MRE 103(a)(1) (requiring a "timely objection" to preserve evidentiary issue for appeal); MRE 103(a)(2) (stating that a party need not renew an objection at trial if the trial court made a "definitive ruling" previously); *Wilson v Williams*, 182 F3d 562, 565-566 (CA 7, 1999) (stating that while definitive rulings before trial do not require a subsequent objection at trial, conditional or tentative rulings before trial do require such in-trial objections to preserve the issue for appeal). While a party need not in every circumstance repeat its objection at trial after the court has made a pretrial ruling, in this instance, the court made it clear that it was delaying its "final" decision until trial and its qualification of the denial as being "without prejudice" indicated that defendant was both free and obligated to raise the issue again at the time of trial. Thus, without a "definitive ruling" before trial, it was incumbent on defendant to raise the objection at trial if he wanted to preserve the issue for appellate review. See MRE 103(a). Instead, at trial, defendant stated "no objection" to the prosecution's request to qualify Haist as an expert and he did not object to any of her testimony.

[4] MRE 702 provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Peterson*, 450 Mich at 353-354; see also *People v Smith*, 205 Mich App 69, 73; 517 NW2d 255 (1994) ("[T]he expert is allowed to testify concerning whether particular conduct by the victim is consistent with having been abused to rebut an inference that the conduct is inconsistent with abuse."), aff'd 450 Mich 349 (1995). The fact that a victim is a child or a young adult, as is the case here, does not undermine the reasoning for the principle allowing the expert testimony. Simply put, Haist testified that, contrary to what the general public generally conceives, victims of sexual abuse commonly delay reporting an assault. Consistent with the rationale supplied by our Supreme Court, we perceive no plain error in Haist's testimony on this subject.

Moreover, defendant also fails to establish the requisite prejudice. Haist's testimony was brief; in addition, the prosecution did not rely on Haist's testimony at all in closing argument, and mentioned it only one time, fleetingly, in rebuttal. As such, defendant has not shown how the testimony likely affected the outcome of this case. Plus, while the victim did not report the incident to the police until almost two weeks after the assault happened, other evidence suggests she did not fabricate the allegations. She testified that she did confide in another person shortly after the incident and eventually told her father, although not immediately after the incident. Thus, to the extent that defendant may suggest that the two-week delay evidences a fabricated allegation, the fact that the victim did talk to another person shortly afterward counters that. Further, the victim's father testified that when he picked the victim up at the restaurant parking lot, she was upset and "obviously" had been crying. And the father explained that the next day, the victim did not leave her room or eat. Thus, in our view, Haist's testimony almost certainly had little to no impact on the jury's conclusion that defendant sexually assaulted the victim.

Affirmed.

/s/ Christopher M. Murray
/s/ Jane E. Markey
/s/ Jonathan Tukel