UNITED STATES of America,
Plaintiff–Appellee,

v.

Janice L. MADOCH, Defendant–Appellant.

No. 96–3754.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1997.

Decided July 8, 1998.

Lisa Huestis (argued), Barry Rand Elden, Chief of Appeals, Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellee.

Frederick F. Cohn (argued), Chicago, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, EASTERBROOK and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Working with her husband and co-conspirator, Lawrence J. Madoch, the defendant Janice Madoch participated in a scheme to prepare phony tax returns and receive substantial tax refunds. The couple also made several false declarations and statements under penalty of perjury in their Chapter 7 bankruptcy proceedings. These efforts led to indictments charging violations of 18 U.S.C. § 286 ("Conspiracy to defraud the Government with respect to claims"), § 287 ("False, fictitious or fraudulent claims"), § 152 ("Concealment of assets; false claims"), and § 2 (liability as principal). Janice was convicted after a jury trial, see *United States v. Madoch*, 935 F.Supp. 965 (N.D.Ill.1996), and this court has already affirmed Lawrence's sentence after he pled guilty. See *United States v. Madoch*, 108 F.3d 761 (7th Cir.1997). Janice now appeals, asserting that the district court erred both in its handling of the trial and in its sentencing decisions. Finding no error that significantly affected the proceedings, we affirm.

Because we have already described the Madochs' criminal scheme in Lawrence's case, *id.* at 762–64, and because those details have little bearing on Janice's appeal, we move straight to her arguments here. She urges first that the district court deprived her of due process when it did not adequately inform (or confusingly informed) the jury of her "battered wife" theory of duress or coercion. Because trial counsel neither objected to the instructions the court gave nor offered a different instruction on Janice's behalf, we are limited to plain error review on this point. See *United States v. Maloney*, 71 F.3d 645, 663–64 (7th Cir.1996) (citing Fed. R.Crim.P. 30). See also Fed.R.Crim.P. 52(b). Under that standard of review, we may reverse a conviction "only when a miscarriage of justice would otherwise result ... [such as] the conviction of an innocent person or the imposition of an erroneous sentence." *United States v. Lopez*, 6 F.3d 1281, 1287 (7th Cir.1993).

■ Prior to the trial, Janice twice underwent court-ordered psychiatric examinations. She filed a pretrial notice indicating her intent to call the examining physicians to testify about her mental state around the time of the alleged offenses and to opine about whether she had the ability "to formulate the necessary specific intent required for the charged offenses." Her theory was that she was a battered wife who acted out of fear of her husband and thus lacked the requisite specific intent for each count, or alternatively, that she was a victim of duress. The court ruled she could not refer to the theories of coercion or duress at trial because she had not proffered enough evidence on those points. *Cf. United States v. Toney*, 27 F.3d 1245, 1248 (7th Cir.1994) (threshold evidentiary burden required before judge will instruct jury on coercion or duress). Nevertheless, at trial her expert testified on redirect that "[a]lthough Miss Madoch is capable of knowing right from wrong and understanding the criminality of [the] charged offenses, *she can easily be manipulated and coerced into abandoning her own judgment.*" (Emphasis added.) The government promptly objected that this testimony contained an improper reference to coercion. The district court agreed after a brief side-

bar, and with defense counsel's acquiescence, at that time gave the jury a limiting instruction that "[c]oercion is not an issue in this case."

■ This exchange, and the court's earlier ruling precluding a coercion or duress defense, provided the backdrop for the following jury instruction on knowledge, coercion, and duress:

> When the word "knowingly" is used in these instructions, it means that the defendant realized what she was doing and was aware of the nature of her conduct, and did not act through ignorance, mistake or accident. Knowledge may be proven· by the defendant's conduct, and by all the facts and circumstances surrounding the case. Neither coercion nor duress is a defense in this case because there is no evidence that the defendant reasonably feared that immediate, serious bodily harm or death would be inflicted on her if she did not commit the offenses charged and that she had no reasonable opportunity to avoid injury. However, you may consider evidence of threats and violence in the case on the question of whether the defendant acted knowingly and intentionally with respect to each crime charged in the indictment.

Although, as we noted, trial counsel did not object to this instruction, Janice now argues that it confused or prejudiced the jury and relieved the government of its burden to prove her specific intent to commit the crimes charged. By telling the jury that neither coercion nor duress was a permissible defense, and even highlighting the absence of evidence of a fear of immediate and serious bodily harm, she claims that the court "emasculated" the portion of the instruction on intent and knowledge. What it should have done, in her view, was to have refrained from any comment at all on the coercion and duress issues, rather than go out of its way to tell the jury that those matters were not on the table.

■ Even accepting the defendant's proposition that a "negative issue spotting" jury instruction can sometimes obfuscate rather than elucidate matters, cf. *United States v. Allen*, 798 F.2d 985, 1005 (7th Cir.1986);

*United States v. Dray*, 901 F.2d 1132, 1141 (1st Cir.1990), the instruction tendered here does not present any such difficulties. Our review of jury instructions is always limited, whether we look at the instructions through the lens of plain error review or not. Reversal is proper only if the instructions as a whole are insufficient to inform the jury correctly of the applicable law and the jury is thereby misled. *United States v. Macey*, 8 F.3d 462, 468 (7th Cir.1993). Although we realize there is a fine distinction between coercion or duress as a substantive defense, cf. *Toney*, 27 F.3d at 1250–52, and the notion that a person may not have been capable of forming the requisite specific intent (*e.g.*, acting knowingly or intentionally), cf. *United States v. Fazzini*, 871 F.2d 635, 641 (7th Cir.1989), the trial court properly distinguished between these two concepts in its instructions. In the former case, the defendant essentially says that she understood what she was doing, but that her actions were compelled by a well-grounded, unavoidable, and immediate threat of death or serious bodily injury, see *Toney*, 27 F.3d at 1250–52; in the latter case, the defendant argues that because of a diminished capacity she had no knowledge or intent to take the actions she did, see *Fazzini*, 871 F.2d at 641. Admittedly, the trial court's instructions were not as clear as they could have been, but they nonetheless correctly reflected the difference between the two theories. Since it is likely the district court gave its "negative issue spotting" instruction on coercion because the defendant's own expert first improperly raised that issue in her testimony, and because we generally present that juries understand and follow the instructions they are given, *United States v. Butler*, 71 F.3d 243, 252 (7th Cir.1995), we cannot on this record find plain error in the court's instructions.

We also decline Janice's invitation to expand the law relating to battered women's syndrome in this case. We do not mean to minimize the significance of battered women's syndrome, or to exclude as a matter of law the possibility that some battered women may be able to prove either coercion, duress, or inability to form a specific intent. But see

*United States v. Willis*, 38 F.3d 170, 175–77 (5th Cir.1994) (holding that evidence of "battered woman's syndrome," which is based on subjective standards, is irrelevant to the common law defense of duress, which is based on objective standards); *United States v. Sixty Acres in Etowah County*, 930 F.2d 857, 860–61 (11th Cir.1991) (although battered wife's generalized fear was "genuine and profound," the traditional requirement of "immediacy" is central to the duress defense). But without proper development of the record below and preservation of these points, we cannot find plain error in the district court's decision not to break new ground. We therefore express no opinion on whether the pattern of abusive behavior to which Janice testified could ever support a different instruction on intent or coercion, because anything we said would necessarily be speculative.

■ Next, Janice makes two arguments with respect to her *Miranda* rights. First, she argues the district court erred in concluding she was not "in custody" for *Miranda* purposes at the time federal agents executed a search warrant for her home. Based on this pre-trial ruling, the court below found that Janice had no right to *Miranda* warnings at all, and thus it denied her motion to suppress statements she made to law enforcement agents shortly after they executed the search warrant. Although Janice failed to renew an objection to the admission of these statements at the time the government introduced them at trial, the district court's clear ruling on Janice's motion *in limine* is sufficient to preserve the issue for appeal. See *Favala v. Cumberland Eng'g Co.*, 17 F.3d 987, 991 (7th Cir.1994) (civil case); *United States v. Pirovolos*, 844 F.2d 415, 424 n. 8 (7th Cir.1988) (criminal case). See also 3A Charles Alan Wright, *Federal Practice & Procedure* § 842 n. 14 (2d ed.1982); Fed.R.Crim.P. 51. *Cf. United States v. Stephenson*, 53 F.3d 836, 843 (7th Cir.1995) (conditional ruling on motion *in limine* does not preserve issue for appeal unless defendant renews objection or seeks reconsideration). We review the question whether Janice was "in custody" for *Miranda* purposes *de novo*, giving deferential review to the trial court's findings of histori-

cal fact and its credibility determinations. *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995); *United States v. James*, 113 F.3d 721, 726 (7th Cir. 1997). Janice also argues the court below should have held an evidentiary hearing before ruling on her *Miranda* motion. However, the record does not reveal that Janice's attorney ever requested a hearing on the motion to suppress. We therefore review the district court's failure to hold an evidentiary hearing on the motion to suppress for plain error only. *Cf. United States v. Iwegbu*, 6 F.3d 272, 274 (5th Cir.1993) (no request for evidentiary hearing on defendant's voluntariness of confession); *United States v. Sahakian*, 965 F.2d 740, 741 (9th Cir.1992) (no request for evidentiary hearing on jury's objectivity after courtroom outburst).

■ The scene Janice paints of the entry of the federal agents into her home is an unpleasant one. The agents served their warrant on her at about 7:00 a.m., when Janice, her husband Larry, her fifteen-year-old daughter Cheryl, and her six-month-old son William were in the house. As the agents rushed into the house, one of them ordered Janice into the kitchen. Another one reached for his gun when she started for the other room to retrieve William. Once she had the baby, she went to the kitchen as instructed, while agents ran through the house yelling. They captured Larry and handcuffed him in the family room. In her affidavit, Janice stated that "[b]efore [the agents] . . . took my husband outside, he told me to go to the bank and take out money for his bail, but . . . [the agents] said I couldn't leave the kitchen." The agents also instructed Janice not to answer the telephone, which rang numerous times while they all sat in the kitchen and the agents questioned her. After some three-and-a-half hours, the agents permitted Janice to get dressed and to go to the bathroom to pump out her breast milk, which she did under the watchful eyes of a female agent. She then had to return to the kitchen for further interrogation. The agents finally left about five or five-and-a-half hours after they arrived. During all of this, Janice was never informed of her rights under *Miranda*.

The district court concluded that this sequence of events did not add up to "custody" for *Miranda* purposes, because Janice was not formally "under arrest," because she served the agents coffee and donuts in the kitchen, and because she was permitted to tend to her children. See *United States v. Madoch*, No. 94 CR 246, 1994 WL 654646, at *3–5 (N.D.Ill. Nov. 14, 1994). Relying on this court's decision in *United States v. Hocking*, 860 F.2d 769 (7th Cir.1988), the district court concluded that the law enforcement agents had not engaged in impermissible "strong arm tactics" that would have justified a belief on Janice's part that she was "in custody." Based on the historical facts that the district court itself acknowledged, the lack of dispositive credibility findings, and the uncontroverted evidence Janice offered in her affidavit, we cannot agree with this conclusion. *Hocking* is factually distinguishable and does not control. The question whether someone is in custody is an objective one, which turns on whether a reasonable person in the suspect's position would feel free to end the conversation or to leave the agents. See *Stansbury v. California*, 511 U.S. 318, 323–25, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (discussing cases). Here, it is plain that Janice was not free to do either. Indeed, she could not even attend to the fairly intimate task of expressing her breast milk in private; the presence of the agent in the bathroom with her was eloquent evidence that she could not just walk out the door and terminate her conversation with the agents.

For similar reasons, we conclude it was plain error for the district court to have resolved the suppression issue without an evidentiary hearing. It is true that had Janice properly requested an evidentiary hearing, she would have had the burden of making a *prima facie* showing of illegality. *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir.1992). Vague, conclusory allegations would not have been enough. *Id.* Instead, the allegations must be specific, material, and disputed. *Id.* But Janice's allegations were nothing if not detailed. Even the government does not seriously contest Janice's narration of what transpired. It argues instead that she did not make clear enough to the district court her intention to dispute the

material fact that she was in custody. In light of the thrust of her affidavit, we cannot agree. Without an evidentiary hearing to consider credibility and demeanor, the district court in this case could not properly resolve the conflict between Janice's account of the agents' behavior in her home and that of the government, which paints a far more benign picture of the encounter.

Even though we agree with Janice both that the district court should have given her an evidentiary hearing, and that her *Miranda* rights were violated on the uncontested facts as she portrays them, we still cannot reverse unless we conclude that these errors made a difference to the outcome of the case. See *Arizona v. Fulminante*, 499 U.S. 279, 312, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *United States v. Westbrook*, 125 F.3d 996, 1003 (7th Cir.1997). On this last and most critical point, however, we agree with the government. First, as it points out, *none* of the statements Janice made to the agents during their five-and-a-half-hour interrogation of her in the kitchen was used in the prosecution's case-in-chief. Instead, the statements were introduced only in rebuttal to Janice's own testimony. Statements taken in violation of Miranda can generally be used to impeach inconsistent trial testimony. See *Michigan v. Harvey*, 494 U.S. 344, 350, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990), citing *Harris v. New York*, 401 U.S. 222, 224, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); *United States v. Martin*, 63 F.3d 1422, 1429 (7th Cir.1995). Nothing in the record persuades us that Janice's statements were involuntary as a constitutional matter, which would render them inadmissible even for impeachment purposes. Compare *Mincey v. Arizona*, 437 U.S. 385, 397–401, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) (statements were involuntary where made when defendant was hospitalized, in great pain, "depressed almost to the point of a coma," and encumbered by tubes, needles, and breathing apparatus) with *United States v. Chrismon*, 965 F.2d 1465, 1469–70 (1992) (statements were not involuntary even though defendant was intoxicated and had low intelligence because "the only coercive acts by the arresting officers ... were necessary or incidental" to

the arrest). We therefore conclude that the errors the district court made in conjunction with the *Miranda* issues were harmless.

Next, Janice argues that her conviction was based on improper use of privileged communications between her and her husband. The district court allowed the government to introduce tape-recorded conversations made while Larry was talking to her on the telephone from the Metropolitan Correctional Center ("MCC"). It reasoned that her statements would have been covered by the marital communication privilege, see *Wolfle v. United States*, 291 U.S. 7, 12–13, 54 S.Ct. 279, 78 L.Ed. 617 (1934), but for the fact that "communications made from jail are likely to be overheard by others, and, thus, it is unreasonable to intend such a communication to be confidential." We review this evidentiary ruling for an abuse of discretion. *United States v. Lofton*, 957 F.2d 476, 477 (7th Cir.1992). Janice admits she knew Larry was in jail while she was talking to him. Thus, because the marital communications privilege protects only communications made in confidence, see *id.*, under the unusual circumstances where the spouse seeking to invoke the communications privilege knows that the other spouse is incarcerated, and bearing in mind the well-known need for correctional institutions to monitor inmate conversations, we agree with the district court that any privilege Janice and Larry might ordinarily have enjoyed did not apply. *Cf. United States v. Harrelson*, 754 F.2d 1153, 1169–70 (5th Cir.1985) (no interspousal communications privilege during prison visit where eavesdropping could reasonably be expected to occur); *United States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir.1989) (non-prisoner caller had no reasonable expectation of privacy when speaking on prison phone in part because CFR placed her on constructive notice that prison officials could legally monitor calls). The court therefore did not err in permitting the government to use the tape-recorded conversations.

Moving from her conviction to her sentence, Janice argues the district court abused its discretion when it refused (on a motion to reconsider) to grant her a downward departure for "extraordinary family circumstances" under § 5H1.6 of the U.S. Sentencing Guidelines. She had two young children who faced hardship from the loss of their mother, as her child psychiatrist emphasized. On the other hand, the record is clear that the district court carefully considered her § 5H1.6 motion and the evidence she submitted, and it chose not to exercise its admitted discretion to order a downward departure. Under these circumstances, where the defendant is not arguing that the sentence was imposed in violation of the law or as the result of an incorrect application of the Guidelines, we have no jurisdiction to review the trial judge's discretionary decision. *United States v. Yoon*, 128 F.3d 515, 529 (7th Cir.1997). Janice has not shown that Judge Nordberg's application of § 5H1.6 was somehow inconsistent with this court's leading pronouncement on that particular provision, which recognizes that the mere "disintegration of existing family life or relationships is insufficient to warrant a departure, as that is to be expected when a family member engages in criminal activity that results in a period of incarceration." *United States v. Canoy*, 38 F.3d 893, 907 (7th Cir.1994). Judge Nordberg understood this principle, and he understood that he had the power to order a downward departure if the facts warranted it. It is also clear from the transcript on Janice's motion for reconsideration that Judge Nordberg had before him all of her proffered forensic evidence. Nothing is left that is proper for appellate intervention.

Last, Janice makes a perfunctory argument that she was denied effective assistance of counsel, in which she merely reiterates in a different guise the arguments we have already considered and rejected. Ordinarily we discourage defendants from raising this point on direct appeal, because it requires us to assess the performance of counsel strictly in light of the record that has already been developed. See *United States v. Young*, 20 F.3d 758, 766 (7th Cir.1994). In a proceeding under 28 U.S.C. § 2255, in contrast, the defendant would have an opportunity to supplement the record in an effort to show that the demanding standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80

L.Ed.2d 674 (1984), have been met. In light of the poor development of this argument at the present stage, we decline the invitation to rule on it. See *United States v. Dawn,* 129 F.3d 878, 881 n. 3 (7th Cir.1997) (citing Fed. R.App. P. 28(a)(6)).

We therefore DISMISS the appellant's appeal on the Sentencing Guidelines issue and AFFIRM the judgment below in all other respects.