UNITED STATES of America

v.

Diane OLIVER.

No. 99 CR 889.

United States District Court,
N.D. Illinois,
Eastern Division.

April 19, 2001.

Madeleine Sullivan Murphy, U.S. Attorney's Office, Chicago, IL, for U.S.

Brian Douglas Sieve, Michael Slade, Kirkland & Ellis, Chicago, IL, James D. Tunick, Law Offices of James D. Tunick, Chicago, IL, for Diane Oliver.

## MEMORANDUM OPINION AND ORDER

KENNELLY, District Judge.

Diane Oliver is charged with two counts of distributing a mixture containing cocaine base in May and June 1977, in violation of 21 U.S.C. § 841(a)(1). On June 29, 1997, she made incriminating statements to law enforcement authorities. She has moved to suppress those statements on the grounds that they were obtained involuntarily, or alternatively that she did not knowingly and voluntarily waive her rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Oliver has requested an evidentiary hearing on her motion; the government argues that no hearing should be held. For the reasons that follow, the Court has decided to hold an evidentiary hearing.

### Facts

Oliver was arrested as part of an investigation of narcotics dealing in the LeClaire Courts public housing project conducted jointly by agents of the Bureau of Alcohol, Tobacco and Firearms; the Department of Housing and Urban Development's Office of Inspector General; and the Chicago Housing Authority Police Department. At the time she was questioned by the agents, Oliver was 37 years old. A clinical psychologist who examined Oliver at the request of defense counsel has submitted a report stating that Oliver has an IQ of 67, which puts her in the lowest 1% of women in her age range and indicating that she is mildly mentally retarded. The psychologist stated that Oliver's score on the verbal comprehension scale of the IQ test indicates "extreme impairment in the area of

verbal comprehension" and that she is more susceptible to suggestion than most people. IQ testing performed by a clinical psychologist who examined Oliver at the request of government counsel produced similar results.

According to the report of an ATF agent, Oliver was tricked by the authorities into coming to OIG's office in downtown Chicago. In her motion, Oliver says she received by mail a notice from HUD stating that she had been recognized as a recipient of public assistance who consistently paid her bills and was therefore eligible for government assistance toward the purchase of a home. She was asked to come to HUD's downtown office on June 29, 1998 to meet with HUD officials and complete the relevant application materials. Oliver's motion states that she went to the HUD office with a male friend and eventually was directed to an upstairs room where she was supposed to fill out the application forms; her male friend was told he could not accompany her.

In her motion, Oliver states that after she arrived at the room, officials presented her with forms to sign; she assumed they were the housing application forms and signed them without reading them. After she signed the forms, the officials (she claims there were several of them in the room) said they were law enforcement agents and accused her of participating in drug dealing. The ATF agent's report confirms the latter point; the report goes on to state that the agents told Oliver that the deals were recorded on tape and proceeded to play the tapes for her. In the report, the agent states that Oliver was next presented with, and signed, forms in which she acknowledged awareness of her rights and agreed to waive those rights and speak with the agents. It has submitted copies of the forms, bearing what appears to be Oliver's signature. In her interview with the psychologist, Oliver claimed that she signed no such documents and that she was never told what her rights were. She appears to be claiming that what she believed were the housing application forms actually may have been the rights waiver forms.

Oliver, who had never before been arrested, states in her motion that she was told by the agents that they wanted her to "cooperate" against a known drug dealer and that if she did not do so, she would go to prison for 15 years. The defense psychologist's report relates that in his interview with Oliver, she reported that she was questioned in a confrontational manner and was threatened with immediate jailing and a 15-year prison term if she did not cooperate with the agents. In her motion, Oliver suggests that a 15-year sentence was far greater than what she actually would receive if convicted; in other words, she appears to contend that the agents made a false threat to get her to confess.

The ATF agent reports that Oliver admitted her involvement in narcotics dealing. In her interview with the government's psychologist, however, Oliver denied making any incriminating admissions. The report of the psychologist retained by defense counsel does not directly address this issue but does suggest that Oliver denied making a confession—the report says that Oliver told the psychologist that the agents "would never accept her answers" to their questions.

### Discussion

The government argues that no hearing should be held, for two reasons. First, it argues that Oliver is not entitled to a hearing because she denies making the statement attributed to her and because she has not supported the claims in her motion with an affidavit. Second, it con-

tends that Oliver's allegations, even if proved, are insufficient as a matter of law to warrant suppression of her statements. The Court disagrees with the government on both counts.

## A. Adequacy of support for Oliver's motion

### 1. Oliver's denial that she made a confession

■ The government argues that Oliver is not entitled to a hearing on the voluntariness of her statements or the validity of her *Miranda* waiver because she denies that she made any incriminating statements. The Court disagrees. It has been the law since at least *Lee v. Mississippi*, 332 U.S. 742, 745–46, 68 S.Ct. 300, 92 L.Ed. 330 (1948), that a defendant may attack a statement as involuntary even while denying having made the statement. We see no reason why a different rule should apply in the *Miranda* waiver context.

### 2. Absence of supporting affidavit

■ To obtain a hearing on a motion to suppress a confession, a defendant must present "definite, specific, detailed, and nonconjectural facts" that would justify suppression. *See, e.g., United States v. Randle*, 966 F.2d 1209, 1211 (7th Cir.1992). The government contends that Oliver's motion should be denied without a hearing because she has failed to provide an affidavit supporting her claims. The Court disagrees.

■ Because the government bears the ultimate burden of persuasion on most motions to suppress, there is no requirement that the defendant testify or even put on any affirmative evidence in order to prevail; often the defendant's case for suppression consists of an attempt to establish the relevant facts through the officer's testimony and/or an attack on the officer's credibility. If a defendant need not testify to prevail on a motion to suppress, why should she be required to submit her own affidavit simply to get a hearing on such a motion?

■ Disputes over whether a defendant should be required to submit an affidavit in order to get a hearing on a motion to suppress often involve an unstated subtext. The prosecution wants to limit the defense's opportunity to question its agents; if the defense is going to get that opportunity, the prosecution wants to make sure the defendant is pinned down to a story, hopefully one that it can prove is false, thus subjecting the defendant to a possible "obstruction of justice" enhancement at sentencing. *See* U.S.S.G. § 3C1.1 The defense wants to avoid the latter, and it does not want the defendant to have to commit to a particular story before all the facts are on the table—which, in many or most criminal cases, does not happen until trial or just before trial due to the limited discovery opportunities available to defendants in federal court. The court has different concerns. We should not unduly restrict defendants from challenging the appropriateness of government investigative actions; motions to suppress evidence provide an important check on law enforcement. At the same time, courts have a legitimate need to preserve scarce resources—in this context, in-court time.

Even without requiring an affidavit from the defendant, however, *Randle* permits a district court to cull out those motions to suppress that do not merit an evidentiary hearing. Some motions fall short of the mark even if everything they allege is true; there is no reason to hold a hearing in such a case. Some motions raise legal issues, not factual ones (for example, whether a particular set of facts justified a stop or arrest); an evidentiary hearing

likewise is unneeded in those cases. Some motions are so sketchy or bare-bones that it is apparent that they are made without any substantial basis but rather in the hope of striking pay dirt somewhere or for use as a discovery tool; denial of a hearing is likewise appropriate in these cases. The motions that survive *Randle* scrutiny are unlikely to be so numerous as to overwhelm the court, or so lacking in merit as to unnecessarily waste judicial resources.

*Randle* requires a submission by the defendant that shows that there is a genuine basis for granting the relief sought and real factual issues that warrant an evidentiary hearing. An affidavit is not the only way to make such a showing; the Seventh Circuit has never held that submission of an affidavit by the defendant is the only way to clear the threshold necessary to obtain a hearing. There is nothing in *Randle* or its Seventh Circuit progeny that requires anything more than a sufficiently detailed written motion.

For these reasons, the Court declines to engraft a defendant-affidavit requirement onto *Randle*. So long as the defendant sets out in detail the grounds for relief and shows that there is a real dispute over material facts, she should get an evidentiary hearing.

## B.  Sufficiency of Oliver's allegations

### 1.  Voluntariness of statement

A confession is deemed voluntary if the government proves by a preponderance of the evidence that it was not obtained through psychological or physical intimidation but instead was the product of a rational intellect and free will. *See, e.g., United States v. Montgomery*, 14 F.3d 1189, 1194 (7th Cir.1994). Police coercion is a prerequisite to a finding that a confession was made involuntarily.[1] *Colorado v. Connelly*, 479 U.S. 157, 163–64, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). "The crucial question is whether the defendant's will was overborne at the time [s]he confessed, and the answer lies in whether the authorities obtained the statement through coercive means." *Montgomery*, 14 F.3d at 1194 (citations and internal quotations omitted). Coercion is determined from the perspective of a reasonable person in the defendant's position; a court considers the characteristics of the accused and the details of the interrogation and determines whether a reasonable person would have felt coerced. *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

None of the circumstances cited by Oliver would be sufficient by itself to render her statement involuntary. *See Connelly*, 479 U.S. at 164, 107 S.Ct. 515 (defendant's impaired mental state does not render statement involuntary); *United States v. Kontny*, 238 F.3d 815, 817 (7th Cir.2001) (trickery does not render confession inadmissible absent threats or promises by government agents); *United States v. Sablotny*, 21 F.3d 747, 750 (7th Cir.1994) (refusal of adult's request to confer with relative did not render confession involuntary); *United States v. Hocking*, 860 F.2d 769, 775 (7th Cir.1988) (accusatory questioning not in itself coercive); *United States v. Braxton*, 112 F.3d 777, 782 (4th Cir.1997) (truthful statements about sentence suspect faces do not render statement involuntary). However, it is at least conceivable that the combination of Oliver's low intelligence and apparent suscep-

[1]. The government argues that Oliver has failed to set forth facts sufficient to indicate that she was in custody at the time she made her statements. But even a non-custodial statement can be involuntary in appropriate circumstances. *United States v. Haddon*, 927 F.2d 942, 946 (7th Cir.1991).

tibility to suggestion; the admitted use of trickery to get her into an interrogation room with several law enforcement agents; extended confrontational questioning; and Oliver's claim that the agents threatened her with drastic penalties that they could not deliver—immediate jailing and a fifteen year prison term—might be enough to render her resulting confession involuntary. At this point, the Court cannot conclude that these circumstances fall short of what is necessary to require a hearing.

### 2. Validity of waiver of rights

■ Oliver also contends that she was not read her rights as required by *Miranda v. Arizona* and that her purported waiver of her rights is invalid. *Miranda* applies only to custodial interrogation, *see Beckwith v. United States*, 425 U.S. 341, 345–47, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); the government argues that Oliver has failed to provide facts sufficient to indicate that she was in custody when she was questioned by the agents. A suspect is considered to be in custody for purposes of *Miranda* if a reasonable person in her position would not have felt free to leave. *See Stansbury v. California*, 511 U.S. 318, 323–25, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); *United States v. Madoch*, 149 F.3d 596, 601 (7th Cir.1998). The totality of the circumstances—including the fact that she was enticed to the site via deception, the number of agents involved, the fact that Oliver's friend was not permitted to accompany her, the length of the questioning, and its allegedly accusatory nature—is sufficient to raise a genuine issue of fact on this score. The Court cannot determine whether Oliver was in custody without holding an evidentiary hearing.

■ A waiver of the defendant's *Miranda* rights is valid if it was made voluntarily, knowingly, and intelligently. *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602;

*United States v. Huerta*, 239 F.3d 865, 873 (7th Cir.2001). The validity of a suspect's waiver depends upon the particular facts and circumstances of the case, *see Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and the factors considered include the suspect's background, experience, and conduct. *Huerta*, 239 F.3d at 873. The same factors that we have reviewed with regard to the voluntariness issue, combined with Oliver's claim that her rights were not read to her and the suggestion in her motion that her written waiver was obtained via a fast shuffle of papers whose import she did not grasp, might conceivably be enough to preclude a finding that she knowingly and voluntarily waived her right to remain silent. Final resolution of these matters must await a hearing.

### Conclusion

For the reasons stated above, the Court concludes that defendant is entitled to an evidentiary hearing on her motion to suppress statements.