**UNITED STATES of America,**

v.

**Jeffrey Boyd RAMSEY, Defendant.**

**Criminal No. 4:10cr95.**

United States District Court,
E.D. Virginia,
Newport News Division.

May 17, 2011.

Laura P. Tayman, Elizabeth M. Yusi, Assistant United States Attorneys, Norfolk, VA, for Plaintiff.

Keith L. Kimball, Phoenix A. Harris, Assistant Federal Public Defenders, Norfolk, VA, for Defendant.

## ORDER OF COMPETENCY

REBECCA BEACH SMITH, District Judge.

This matter comes before the court for determination of the defendant's, Jeffrey Boyd Ramsey ("Ramsey"), competency to stand trial. On August 10, 2010, Ramsey was indicted in an eight-count indictment, charging him with sexual exploitation of a child in violation of 18 U.S.C. § 2251(b), receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).[1] At Ramsey's initial appearance on November 12, 2010, the defense, with no opposition from the United States, moved to have Ramsey evaluated to determine whether he was competent to stand trial and if he was insane at the time of the offenses alleged in the indictment.[2] The court granted that motion, and on November 18, 2010, the court ordered that Ramsey be committed to the custody of the Attorney General to a suitable medical facility for the purposes of examination by a psychiatrist to determine sanity at the time of the offense and competency to stand trial. See ECF No. 9. On December 7, 2010, the court issued an amended order that permitted Ramsey to be evaluated by a psychologist. Ramsey was admitted to FCI Butner for evaluation on December 21, 2010. On March 18, 2011, Lieutenant Commander Herbert Coard ("Coard"), a Sex Offender Forensic Psychologist, submitted his sealed report to the court. See ECF No. 17 [hereinafter "Report"].

In the Report, Coard finds that Ramsey appears competent to proceed, diagnoses Ramsey with malingering, and specifically notes that Ramsey is not diagnosed with a severe mental illness.[3] Coard could not assess whether Ramsey understands the charges and consequences he faces if convicted and whether Ramsey knows, and can work, with his defense attorney because Ramsey did not answer any questions during his evaluation. Coard opines that although Ramsey's presentation and behavior superficially indicate a person with significant functional impairment, there is actually no significant functional impairment, nor a severe mental disease or defect. Rather, Ramsey's presentation and behavior are part of Ramsey's attempts to malinger cognitive and psychiatric symptoms. According to Coard, there are strong indications that Ramsey is intentionally suppressing his ability to understand the nature and the consequences of the court proceedings and his ability to work with his counsel. On April 19, 2011, the court scheduled a competency hearing for April 27, 2011, which was subsequently rescheduled for April 28, 2011.

At the competency hearing, both the United States and the defense stipulated to the contents of the Report and to the proposition that Coard, if called as a witness, would testify consistent with it. Nevertheless, the parties would not agree that the Report supports finding Ramsey competent. In arguing against competency, defense counsel highlighted Coard's inability to assess whether Ramsey under-

---

**1.** The indictment also includes a criminal forfeiture allegation.

**2.** On November 17, 2010, the defendant filed a Notice of Intent to Rely on Insanity Defense. ECF No. 8.

**3.** The Report also finds that Ramsey does not appear to have been legally insane at the time of the offense. Ramsey's insanity defense is not an issue currently currently before the court for determination. See 18 U.S.C. § 17.

stands the charges and consequences he faces and whether Ramsey knows and can work with his defense counsel. Defense counsel also claimed that he has been unable to communicate with Ramsey when they meet. The United States responded by highlighting Coard's diagnoses of malingering and accompanying opinion that he could not make such assessments because of Ramsey's malingering. Additionally, the United States called two witnesses in an effort to corroborate Coard's findings—Ramsey's wife, Lisa Ramsey, and FBI Special Agent Paula Barrows ("Barrows"). The defense objected to certain testimony from Lisa Ramsey, as well as to the admissibility of Government Exhibit 2, on the grounds of the confidential marital communications privilege. It also objected to some of Barrows' testimony on the grounds of the pastoral privilege. The court conditionally admitted all testimony and exhibits, permitting the parties to submit post-hearing briefs regarding the applicability of any privileges on or before May 3, 2011. On May 3, 2011, the defense filed its Memorandum of Law Regarding the Objection to the Consideration of Privileged and Protected Marital Communications. The defense did not submit any briefing regarding a pastoral privilege. The United States sealed Memorandum of Law Regarding the Marital Communication Privilege was filed on May 16, 2011.

### Analysis

### Marital Communication Privilege

The main issue before the court is whether Ramsey is competent to stand trial. Before turning to that issue, however, the court must first determine whether any evidentiary privileges bar certain testimony and/or exhibits submitted by the United States at the competency hearing. The court need not dwell long on the pastoral privilege, as no evidence in the record implicates it.[4] "The priest-penitent privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return." *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). None of the testimony, nor any of the exhibits presented at the hearing contain communications from Ramsey that were designed to elicit spiritual advice or consolation about flawed acts or thoughts. Moreover, to the extent any communications in the record may implicate that privilege, the court does not rely upon them in determining competency. Accordingly, the defendant's objection to any testimony or exhibits on that ground is **OVERRULED.**

 At the hearing, the defense objected that the privilege covering confidential marital communications precludes the court from considering any testimony from Lisa Ramsey regarding communications with Ramsey while he was in jail, as well as the contents of letters Ramsey mailed her from jail.[5] *See United States v. Acker,* 52 F.3d 509, 514 (4th Cir.1995). Although privileges apply in competency hearings, *see* Fed.R.Evid. 1101(c), and the marital communication privilege is Ramsey's to assert, *see Acker,* 52 F.3d at 514, Ramsey's statements to his wife while he was in jail are not privileged. Because "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that the public ... has a right to every man's

---

4. Indeed, the defense does not discuss the pastoral privilege in its post-hearing brief.

5. Lisa Ramsey elected to testify. Accordingly, the privilege against adverse spousal testimo-

ny is inapplicable. *See Acker,* 52 F.3d at 514 (remarking that such privilege is "vested in the witness-spouse" (citations omitted)).

evidence[ ] . . ., they must be strictly construed and accepted only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Trammel*, 445 U.S. at 50, 100 S.Ct. 906 (internal quotation marks and citations omitted). In this case, no public good would be served by excluding Lisa Ramsey's testimony regarding her conversations with the defendant in jail because those conversations were not confidential. *See United States v. Madoch*, 149 F.3d 596, 602 (7th Cir.1998) ("[T]he marital communication privilege protects only communications made in confidence . . . ." (citations omitted)).

The presumption of confidentiality in marital communications, *see Blau v. United States*, 340 U.S. 332, 333, 71 S.Ct. 301, 95 L.Ed. 306 (1951), is negated here because Ramsey was communicating with his wife over the phone and in person *while he was confined in jail*. Because prisons routinely monitor inmate conversations, Ramsey's conversations with his wife were not confidential.[6] *See Madoch*, 149 F.3d at 602; *cf. United States v. Harrelson*, 754 F.2d 1153, 1169–1170 (5th Cir.1985) ("[O]ne who expects privacy under the circumstances of prison visiting

is, if not actually foolish, exceptionally naïve[.]"); *United States v. Lentz*, 419 F.Supp.2d 820, 828 (E.D.Va.2005) (noting that because prisoners are on notice that their telephone conversations are recorded, they can have no expectation of confidentiality in such conversations). The court does no violence to the preservation of the marital relationship by considering Lisa Ramsey's testimony regarding her conversations with the defendant while he was in jail. *See* Def.'s Mem. 3, ECF No. 24. Accordingly the court **OVERRULES** the defense's objection as regards those statements. The court cannot determine whether Ramsey could have a reasonable expectation of privacy in letters he mails from jail. Accordingly, the court **SUSTAINS** the objection as regards Government Exhibit 2.[7] The court will not consider that exhibit in making its competency determination.

### Competency

In determining competency, the court is guided by 18 U.S.C. § 4241(d), which provides that a defendant is considered incompetent if he "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against

---

6. The defense argues that the defendant must have intended his conversation with Lisa Ramsey be confidential because the subject matter "implicated Mr. Ramsey's possible deception." Def.'s Mem. 4, ECF No. 24. This argument is unpersuasive. Under such logic, anytime a defendant reveals information to his spouse that could negatively impact him in a criminal proceeding, that communication would be privileged, regardless of whether a third party could readily overhear it. As the Supreme Court admonished, the marital privilege "should be allowed only when it is plain that marital confidence cannot otherwise reasonably be preserved." *Wolfle v. United States*, 291 U.S. 7, 17, 54 S.Ct. 279, 78 L.Ed. 617 (1934). This is not such a situation. The

court will not suppress relevant information that the defendant freely disclosed in a setting devoid of privacy. *See id.* at 14, 54 S.Ct. 279 ("[W]herever a communication, because of its nature or the circumstances under which it was made, was obviously not intended to be confidential, it is not a privileged communication." (citations omitted)).

7. Said Exhibit remains under seal. Moreover, all references to Coard's Report herein directly concern matters put at issue by the defendant and addressed in open court at the competency hearing. The Report itself, which contains other sensitive medical and confidential matters, remains under seal.

him or to assist properly in his defense." *See Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975) ("It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."); *see also Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam) ("[T]he test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." (internal quotation marks omitted)). Incompetency must be determined by a preponderance of the evidence. 18 U.S.C. § 4241(d).

■ The evidence demonstrates that Ramsey does not suffer from a mental disease or defect, and is malingering symptoms of mental defects in order to escape prosecution. Coard's Report unequivocally finds that Ramsey does not exhibit any major mental illness, nor any symptoms associated with a severe mental disease. Significantly, Coard does not recommend any treatment for Ramsey. Rather he explains that improvement of Ramsey's present condition is dependent on Ramsey choosing to cooperate with the court. Coard attributes Ramsey's current appearance as a person with significant functional impairment to malingering. The explanation of Coard's diagnoses is cogent and believable. Moreover, the method he employed to formulate his diagnoses was thorough. Coard observe Ramsey numerous times, and noted important inconsistencies when comparing Ramsey's observed behavior during clinical interactions against covert naturalistic observations of Ramsey's behavior in his cell and in the recreation area. Coard also reviewed numerous collateral sources that proved a stark contrast between Ramsey's behavior and symptoms before being arrested as compared to after his arrest.

The defense argues that the Report does not support finding Ramsey competent because Coard was unable to assess whether Ramsey understands the charges and the consequences he faces if convicted and whether Ramsey is able to work with his attorney. The defense overlooks the reason Coard was unable to so opine. In the Report, Coard asserts that he could not specifically determine Ramsey's ability to factually and rationally understand the court proceedings and to work with his attorney because Ramsey is intentionally suppressing his ability. In essence, Ramsey intentionally frustrated Coard's examination. Ramsey cannot prevent his own prosecution by malingering. In determining competency, the court is concerned with Ramsey's *ability* to understand the proceeding and to work with his attorney, not whether he will exercise that ability. Because the Report is clear that Ramsey is malingering, rather than suffering from a mental disease or defect, it is irrelevant that Coard could not specifically assess Ramsey's abilities. The court adopts the findings in the Report and, accordingly, **FINDS** that any perceived inability on the part of Ramsey is attributable to malingering, and not to a mental disease or defect. The court further **FINDS** that the Report establishes by a preponderance of the evidence that Ramsey is not "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(d).

Although this settles the matter, the court also notes that the United States presented other evidence strongly corrobo-

rative of Coard's malingering diagnoses. Lisa Ramsey testified that she never noticed any symptoms the defendant now exhibits prior to his arrest—no changes in his health and memory, no indications of mental health issues, and no indications of depression. Most significant, however, are statements Ramsey made to her following his arrest. Lisa Ramsey testified that around November of 2009, Ramsey discussed his mental state with her over the phone and in person while he was in jail. In the course of those conversations, Ramsey told her he conducted research in the jail's library and discovered that, if he was deemed incompetent for five years, he would be released and the charges would be dropped. He told her that he could fake incompetency for five years, and he advised her that he was going to start acting incompetent. The defendant spoke to Lisa Ramsey about his plan to fake incompetency ten to fifteen times over the course of one month, and the changes in his presentation only began to manifest themselves thereafter. Barrows' testimony further corroborates Ramsey's malingering. In the course of investigating Ramsey, Barrows spoke to several of Ramsey's business and social acquaintances who all corroborated that Ramsey was coherent and did not exhibit any mental illness in the months leading up to his arrest.

The Report establishes Ramsey's competence by a preponderance of the evidence. When considered along with the testimony of Lisa Ramsey and Barrows, Ramsey's competence is established by clear and convincing evidence. Accordingly, the court **FINDS** Ramsey is competent to stand trial. The court **DIRECTS** that arraignment and a full detention hearing be scheduled forthwith before a United States Magistrate Judge. The Clerk is **DIRECTED** to send a copy of this Order of Competency to counsel for the parties.

It is so **ORDERED.**